IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JOLYNDA COWHER,                          *
                                         *
        Plaintiff,                       *
                                         *
            v.                           *          CV 120-178
                                         *
UNITED STATES OF AMERICA,                *
                                         *
        Defendant.                       *

---

**O R D E R**

---

Before the Court is Defendant's motion for summary judgment. (Doc. 36.)  For the following reasons, the motion is **GRANTED**.

## I. BACKGROUND

This case is a Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* ("FTCA") action brought by Plaintiff Jolynda Cowher on December 8, 2020.  (Doc. 1.)  Plaintiff is a United States military veteran who sought mental health treatment for Post-Traumatic Stress Disorder ("PTSD") at the Charlie Norwood VA Medical Center (the "Norwood VA") in Augusta, Georgia starting in October 2017. (Id. at 3.)  She was assigned to Therapist Alvin Peeples ("Therapist Peeples"), a VA employee who provided her with mental health treatment and care.  (Id.)  However, she claims Therapist Peeples took advantage of her mental health condition and sexually

abused her, after which he broke off their therapeutic relationship because "he accomplished his goal of having intercourse with the Plaintiff." (Id. at 3-4.) Plaintiff was reassigned to Dr. Nancy Jane Batten ("Dr. Batten") – also an employee of the Norwood VA – whom she told about her relationship with Therapist Peeples, including the sexual abuse. (Id. at 5.) However, Dr. Batten allegedly failed to alert the proper authorities about the sexual abuse, so Plaintiff "discontinued seeking mental health treatment from the [Norwood VA] and was unable to obtain proper mental health treatment elsewhere." (Id.)

Without treatment, Plaintiff's condition "spiraled out of control." (Id.) On or about March 12, 2018, she attempted suicide by cutting her wrists. (Id.) She was admitted to the Riverwoods Behavioral Health System ("Riverwoods"), where she attempted suicide again on August 27, 2018 and was hospitalized for suicidal ideations. (Id.) She alleges she "suffered from major depressive disorder and suicidal thoughts" and "was suicidal because her mental [health] treatments had stopped," and alleges that "if she could have continued mental health therapy, [she] would not have attempted suicide." (Id.) She brings claims against the United States for (1) vicarious liability for failure to properly supervise Therapist Peeples, resulting in her suicide attempt; (2) liability for negligently retaining Therapist Peeples, resulting in her suicide attempt; and (3) violations of the standard of care

in Plaintiff's mental health treatment.  (Id. at 6-8.)  Defendant seeks summary judgment on all counts.  (Doc. 36.)  The Court discusses the arguments below.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Facts are "material" if they could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation omitted) (internal quotation marks omitted). The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case, or by showing that

3

there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex, 477 U.S. 317). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. Id. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with

4

additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17 (citation omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave the Parties appropriate notice of the motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 37.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

Defendant moves for summary judgment on several grounds. First, it claims the Court lacks subject matter jurisdiction over Plaintiff's claims for three reasons: (1) Plaintiff failed to put the VA on notice of her claim, resulting in waiver; (2) the United States has not waived sovereign immunity where a federal employee acts outside the scope of his employment, as it claims Therapist

Peeples did here; and (3) Plaintiff "cannot use [negligence claims] to circumvent the scope-of-employment condition of 28 U.S.C. § 1346(b)(1)," which deprives her of subject matter jurisdiction for her remaining claims of negligent hiring and retention. (Doc. 36, at 5-16.) Lastly, it argues that even if the Court has subject matter jurisdiction over the claims, Plaintiff fails to state claims for negligent supervision and retention. (Id. at 17.)

As an initial matter, the Court must determine whether it has subject matter jurisdiction over the suit. Jacobson v. Fla. Sec. of State, 974 F.3d 1236, 1245 (11th Cir. 2020) ("If at any point a federal court discovers a lack of jurisdiction, it must dismiss the action." (citation omitted)). "[T]he United States, as a sovereign entity, is immune from suit unless it consents to be sued." Zelaya v. United States, 781 F.3d 1315, 1321 (11th Cir. 2015) (citations omitted). "Through the enactment of the FTCA, the federal government has, as a general matter, waived its immunity from tort suits based on state law tort claims." Id. (citations omitted); see also id. at 1323 ("The FTCA was enacted to provide redress to injured individuals for ordinary torts recognized by state law but committed by federal employees." (citations omitted)). "But in offering its consent to be sued, the United States has the power to condition a waiver of its immunity as broadly or narrowly as it wishes, and according to whatever terms it chooses to impose." Id. at 1321-22 (citations

6

omitted).   "That  being  so,  a  court  must  strictly  observe  the
limitations  and  conditions  upon  which  the  [United  States]  consents
to  be  sued  and  cannot  imply  exceptions  not  present  within  the  terms
of  the  waiver."   Id. at 1322  (citations  and  internal  quotations
omitted).   "If  there  is  no  specific  waiver  of  sovereign  immunity
as  to  a  particular  claim  filed  against  the  [United  States],  the
court  lacks  subject  matter  jurisdiction  over  the  suit."   Id.
(citations  omitted).   Where  an  exception  exists  that
"neutralize[s]  what  would  otherwise  be  a  waiver  of  immunity,  a
court  will  lack  subject  matter  jurisdiction  over  the  action."   Id.
("These  exceptions  must  be  strictly  construed  in  favor  of  the
United  States  .  .  .  ."   (internal  quotations  and  citations
omitted)).

## A. Notice Requirement

Defendant  first  argues  the  Court  lacks  subject  matter
jurisdiction  over  this  action  because  Plaintiff  failed  to
adequately  put  the  VA  on  notice  of  her  claims.   (Doc. 36, at 5-
8.)   "Through  the  enactment  of  the  FTCA,  the  federal  government
has,  as  a  general  matter,  waived  its  immunity  from  tort  suits  based
on  state  law  tort  claims."   Caldwell v. Klinker, 646 F. App'x 842,
845-46 (11th Cir. 2016) (citing Zelaya, 781 F.3d at 1322).   "The
FTCA  provides  a  limited  waiver  of  the  United  States'  sovereign
immunity  for  tort  claims."   Dalrymple v. United States, 460 F.3d
1318, 1324 (11th Cir. 2006) (citing Suarez v. United States, 22

F.3d 1064, 1065 (11th Cir. 1994)). "This waiver must be scrupulously observed, and not expanded, by the courts." Kruger v. United States, 686 F. Supp. 2d 1333, 1335 (N.D. Ga. 2010) (citing Suarez, 22 F.3d at 1065). "A federal court may not exercise jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency." Suarez, 22 F.3d at 1065 (citation omitted). "The statutory purpose of requiring an administrative claim is 'to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States.'" Rise v. United States, 630 F.2d 1068, 1071 (5th Cir. 1980) (citation omitted). The "requisite jurisdictional notice under § 2675 [is] 'minimal'[;] the purpose of that notice is to 'promptly inform the relevant agency of the circumstances of the accident so that it may investigate the claim and respond either by settlement or defense.'" Tidd v. United States, 786 F.2d 1565, 1568 (11th Cir. 1986) (quoting Adams v. United States, 615 F.2d 284, 289 (5th Cir. 1980), clarified on reh'g, 622 F.2d 197 (1980)). "This purpose will be served as long as a claim brings to the Government's attention facts sufficient to enable it thoroughly to investigate its potential liability and to conduct settlement negotiations with the claimant." Rise, 630 F.2d at 1071. "Accordingly, . . . if the Government's investigation of [Plaintiff's] claim

should have revealed theories of liability other than those
specifically enumerated therein, those theories can properly be
considered part of the claim." Id.

Here, Plaintiff's Standard Form 95 ("SF-95") stated she "was
sexually abused by her therapist Alvin Peebles [sic], an employee
of the Charlie Norwood VA Medical Center" from "October 2017
through December 2017." (Doc. 1-2, at 2.) Plaintiff described
the "nature and extent of each injury" as "[p]sychological damage;
[a]ssault; [m]ental pain and suffering; [v]iolation of civil
rights; [p]hysical pain and suffering; [i]nfliction of[ ]emotional
distress." (Id.) Defendant concedes this language put the VA on
notice of claims against Therapist Peeples for intentional torts,
but claims it "does not allege language sufficient to place the VA
on notice that Plaintiff was claiming negligence and/or medical
malpractice by [Therapist] Peeples [sic], who was referred to by
name . . . , nor was [the language] sufficient to place the VA on
notice that Plaintiff was claiming negligence by other
individuals[] who were not named in the SF-95, or against the VA
itself for negligently retaining Peeples." (Doc. 36, at 7-8.)

Based on its review of the SF-95, the Court finds that a
reasonable investigation of the facts alleged in the SF-95 "should
have revealed theories of liability other than those specifically
enumerated therein." Rise, 630 F.2d at 1071. Plaintiff noted
that she was sexually assaulted by her VA-employed therapist during

an episode of care at the VA.  (Doc. 1, at 4.)  While she may not have specifically mentioned her theories of negligence claims in her SF-95, Plaintiff *did* fairly put the VA on notice that she would file suit as a result of Therapist Peeples' behavior, which he undertook during his employment with the VA.  Plaintiff is not required to enumerate every potential cause of action she may pursue based on those actions; rather, to satisfy the notice requirement, she simply had to describe the factual underpinnings of the claims she may have later decided to bring so Defendant could sufficiently investigate its potential liability arising thereunder.  Rise, 630 F.2d at 1071.  Since Plaintiff did so on the SF-95 by describing the actions underlying her suit, she satisfied the notice requirements of Section 2675(a) and Defendant's claim for summary judgment on that ground must be denied.

**B. Scope-of-Employment**

Defendant next argues for summary judgment because "the FTCA's limited waiver of sovereign immunity does not extend to actions taken by employees that lie outside the scope of their employment." (Doc. 36, at 8.)  Because Defendant argues Therapist Peeples was not acting within the scope of his employment when he sexually assaulted Plaintiff, it claims the Court lacks subject matter jurisdiction over Plaintiff's claims.  (Id. at 8-9.)

"Any plaintiff seeking to sue the United States under the FTCA must satisfy two initial statutory burdens to establish jurisdiction," namely: identifying (1) "an explicit statutory grant of subject matter jurisdiction, which in the case of the FTCA is 28 U.S.C. § 1346(b)(1);" and (2) "a statute that waives [the United States'] sovereign immunity[, which in the case of the FTCA] is provided in chapter 171 of Title 28, which chapter includes §§ 2671-2680." Zelaya, 781 F.3d at 1321 (citations omitted).   28 U.S.C. § 1346(b)(1) provides federal courts with jurisdiction only over torts committed by federal employees "while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b)(1). "State law, therefore, governs the question of whether the United States has waived its sovereign immunity against liability for the acts complained of by the plaintiff." Lawrence v. Dunbar, 919 F.2d 1525, 1528 (11th Cir. 1990) (citations omitted); see also Stevens v. Battelle Mem'l Inst., 488 F.3d 896, 899 n.3 (11th Cir. 2007) ("Liability in an FTCA action is determined in accordance with the law of the place where the government's act or omission occurred . . . ." (citations omitted)).   Because all relevant tortious acts – and tortious injuries resulting therefrom – are alleged to have occurred in Georgia, the Court looks to Georgia

11

law to determine the United States' liability. <u>See</u> <u>Besada v. U.S.</u> <u>Citizenship & Immigr. Servs.</u>, 645 F. App'x 879, 880 (11th Cir. 2016) ("To state a claim under the FTCA, a plaintiff must allege a violation of state law by an employee of the federal government acting within the scope of his employment." (citing <u>Zelaya</u>, 781 F.3d at 1323-24)).

In Georgia, "[a]n employer is liable for negligent or intentional torts committed by an employee only if the torts were committed in furtherance of, and within the scope of, the employer's business." <u>Hendrix v. Snow</u>, 170 F. App'x 68, 82 (11th Cir. 2006) (citing <u>Piedmont Hosp., Inc. v. Palladino</u>, 580 S.E.2d 215, 217 (Ga. 2003)); <u>see also</u> <u>Flohr v. Mackovjak</u>, 84 F.3d 386, 390 (11th Cir. 1996) ("The question of whether an employee's conduct was within the scope of his employment is governed by the law of the state where the incident occurred." (internal quotations and citations omitted)). "Stated another way, if the employee was authorized to accomplish the purpose in pursuance of which the tort was committed, the employer is liable." <u>Chorey, Taylor &</u> <u>Feil, P.C. v. Clark</u>, 539 S.E.2d 139, 140 (Ga. 2000) (citations omitted). Conversely, "an employer cannot be held liable [in Georgia] on the basis of *respondeat superior* if the employee's acts (1) were committed for purely personal reasons associated solely with the employee's own gratification, and (2) were entirely disconnected from the scope of the employee's employment."

<u>Hendrix</u>, 170 F. App'x at 82 (citing <u>Palladino</u>, 580 S.E.2d at 217); <u>see also Palladino</u>, 580 S.E.2d at 217 ("Under Georgia law, if a servant steps aside from his master's business to do an act entirely disconnected from it, and injury to another results from the act, the servant may be liable, but the master is not liable." (internal quotations and citations omitted)).

Here, Plaintiff argues the United States is vicariously liable for the actions of Therapist Peeples, including "grooming, deceiving, and then molesting the Plaintiff while working as the Plaintiff's therapist at the [Norwood VA]." (Doc. 39, at 9-10.) She argues that "[b]ut-for his employment as a VA counselor, Therapist Peeples would have had no contact with the Plaintiff." (<u>Id.</u> at 10.) Plaintiff cites <u>Davis v. Standifer</u>, 621 S.E.2d 852 (Ga. Ct. App. 2005) for the proposition that Defendant is liable because "Therapist Peeples used his employment as a way to groom, and then sexually abuse the Plaintiff." (Doc. 39, at 9.) Plaintiff also alleges Therapist Peeples took advantage of the transference phenomenon and overcame her will to "accomplish his goal of having intercourse with [her]." (Doc. 1, at 4.)

In spite of Plaintiff's arguments, "it is well settled under Georgia law that an employer is not responsible for the sexual misconduct of an employee" because "these types of torts, being purely personal in nature, are unrelated to the employee's duties and, therefore, are outside the scope of employment because they

were not in furtherance of the master's business."[1]   Alpharetta

First United Methodist Church v. Stewart, 472 S.E.2d 532, 535-36

(Ga. Ct. App. 1996) (citations omitted).   While Plaintiff alleges

Therapist Peeples used his position to overcome her will and cause

her to become too susceptible to his sexual overtures, she does

not allege facts showing Therapist Peeples did so in furtherance

of the purpose for which he was authorized within the scope of his

employment.  (Doc. 1, at 4.)   Rather, Plaintiff alleges Therapist

Peeples' goal in undertaking these actions was "having intercourse

with the Plaintiff" - not providing the mental health treatment

she sought.  (Doc. 1, at 4.)   As such, Therapist Peeples was not

acting within the scope of his employment and Defendant is entitled

to sovereign immunity on that claim.

---

[1] See, e.g., Palladino, 580 S.E.2d at 217 (hospital not vicariously liable for employee's improper fondling of in-patient's genitals or attempts to perform oral sex thereon, despite being authorized to inspect the in-patient's groin, to clean the area, and to move the in-patient's testicles if necessary to perform these tasks, because "[a]t that point, [the employee] was acting not as a hospital employee, but rather purely for his own personal reasons"); Stewart, 472 S.E.2d at 533-36 (despite minister's "manipulation of the transference phenomenon," church not vicariously liable for minister's nonconsensual sexual encounters with a church member he was counselling because such behavior "is not a part of, or in any way incidental to, a minister's duties and responsibilities"); Rogers v. Carmike Cinemas, Inc., 439 S.E.2d 663, 665 (Ga. Ct. App. 1993) (employer not vicariously liable for sexual harassment of employee by company officers and employees "since the harassment was not committed in the furtherance of [the employer's] business"); Mountain v. S. Bell Tel. & Tel. Co., 421 S.E.2d 284, 285 (Ga. Ct. App. 1992) (employer not vicariously liable for rape committed by employee during in-home installation because the "rape was not related to [the employee's] employment and did not further [the employer's] business" and "[t]he mere fact that the assault occurred during a time of ostensible employment in the [victim's] home is not dispositive on the question of scope of employment"); B.C.B. Co., Inc. v. Troutman, 409 S.E.2d 218, 219 (Ga. Ct. App. 1991) (employer not vicariously liable for sexual harassment of employee by supervisor because acts of sexual harassment were not committed by the supervisor in furtherance of the employer's business).

Before advancing to the next claim, the Court notes that none
of Plaintiff's counterarguments require a contrary holding.  (See
Doc. 39, at 9-11.)  First, Davis is distinguishable, as that case
analyzes a police officer's "scope of employment" within the bounds
of the Georgia Tort Claims Act - not the Federal Tort Claims Act.
621 S.E.2d at 855-56.  As Defendant points out, the analysis of
whether an individual is acting within the scope of his employment
is employed differently in these different contexts, so Davis does
not control here.  (See Doc. 41, at 7-8.)  Plaintiff also argues
the Court's previous decision in Rushton v. United States, No.
117-171, 2018 WL 3028946 (S.D. Ga. June 18, 2018) is
distinguishable.  (Doc. 39, at 11.)  That case also involved FTCA
claims against a Norwood VA therapist who, in that case, sexually
harassed the Plaintiff via telephone and followed her around the
grocery store.  Rushton, 2018 WL 3028946 at *1.  Plaintiff argues
the cases are distinct because in Rushton, the therapist "acted
completely outside of his employment with the [Norwood VA],"
whereas Therapist Peeples "was actively using his sessions to
coerce the Plaintiff into having romantic feelings for him."  (Doc.
39, at 11.)  As the Court noted above, however, this distinction
does not compel a different result.  The cases cited above clearly
involve alleged sexual misconduct that took place within the
temporal and geographic course of the employee's employment.  The
crucial distinction is not whether the employee was on the clock

or at the Norwood VA at the time he committed the misconduct;
rather, the analysis centers on whether Therapist Peeples was
acting within the scope of his employment at the time of his
alleged misconduct. <u>Hendrix</u>, 170 F. App'x at 82. For the reasons
explained above, he was not; therefore, the Court lacks subject
matter jurisdiction over those claims.

### C. Negligent Hiring/Supervision Claims

Plaintiff also seeks to hold the United States liable by
alleging that it was negligent in its supervision and retention of
Therapist Peeples. (<u>See</u> Doc. 1, at 6-7.) Specifically, Plaintiff
alleges numerous co-workers, supervisors, and other employees of
Defendant "were obligated to notify persons and make sure that
Therapist Peeples was removed from the [Norwood VA]." (<u>Id.</u> at 7.)
She claims these employees' "failure to replace Therapist Peeples
caused him to be negligently and wrongfully retained as an employee
of [the Norwood VA]," and that as a result of these employees'
failures, she "has been severely injured." (<u>Id.</u>) Finally, she
claims these employees breached the standard of care for mental
health treatment in several ways. (<u>Id.</u> at 8.)

Several Circuit Courts have considered such negligent
supervision/retention claims, where they arise solely from a
tortfeasor-employee's employment status, to be nothing more than
"disguised" <i>respondeat superior</i> claims. <u>See</u>, e.g., <u>Glade ex rel.
Lundskow v. United States</u>, 692 F.3d 718, 724 (7th Cir. 2012)

(collecting cases).    Indeed,   the   Third   Circuit   has   held   that
"plaintiffs under the FTCA cannot use a negligent supervision [or
retention]  claim  to  circumvent  the  scope-of-employment  condition
of  §  1346(b)(1)."    CNA v. United States,  535  F.3d  132,  149  (3d
Cir. 2008).  Rather, the Third Circuit requires a plaintiff "allege
truly  independent  negligence  like  in  Sheridan."[2]    Id.  (quoting
Sheridan v. United States, 487 U.S. 392, 401 (1988)).  The Eleventh
Circuit – at least in the context of the intentional tort exception
to  the  United  States  waiver  of  sovereign  immunity,  28  U.S.C.  §
2680(h) – appears  to  have  adopted  this  "independent  negligence"
requirement.   See  Alvarez v. United States,  862  F.3d  1297,  1307-
10 (11th Cir. 2017).   Similarly,  regarding  Plaintiff's  claims  for
breach  of  the  standard  of  care  against  the  other  named  employees,
"[i]t  is  the  substance  of  the  claim  and  not  the  language  used  in
stating it which controls."  See Gaudet v. United States, 517 F.2d
1034, 1035 (5th Cir. 1975) (citations omitted).

     Here,  Plaintiff  has  failed  to  identify  –  and  the  Court  is
unable  to  discern  –  any  reason  why  the  "independent  negligence"
requirement  adopted  by  the  Eleventh  Circuit  in  Alvarez  would  be
inapplicable  to  Plaintiff's  present  negligent  supervision  and
retention claims.  Further, the Court concludes that – as pled in

---

[2] "Independent  negligence  in  this  context  means  negligence  irrespective  of  an
employment  relationship."   CNA,  535  F.3d  at  149  (citing  Sheridan,  487  U.S.  at
397–98).   "Negligent  supervision  claims  .  .  .,  on  the  other  hand,  are  rooted  in
supervisor-supervisee  relationships  at  work;  they  relate  closely  to  the
supervisee's  .  .  .  employment  status."   Id.  (footnote omitted).

her complaint – Plaintiff's negligent supervision/retention claims and standard-of-care claims are "rooted in supervisor-supervisee relationships at work" alone and therefore are closely related to Therapist Peeples' employment status. See id. at 1310.  The only connection of the United States to the alleged breaches results from Therapist Peeples' status as a government employee. See CNA, 535 F.3d at 149.  Crucially, without Therapist Peeples' employment status as a VA employee at the time of the incident, Plaintiff would have no basis for suit against the remaining employees, and Plaintiff's claims for breach of the standard of care are based on actions Therapist Peeples undertook outside the scope of his employment.   Accordingly,   the   Court   lacks   subject   matter jurisdiction over those claims because they are not sufficiently "independent" from the underlying claim upon which they are based and for which this Court also lacks subject matter jurisdiction. See   CNA,   535   F.3d   at   149.   Plaintiff's   negligent supervision/retention claims, as well as her claims for breach of the standard of care, are due to be dismissed.

### IV. CONCLUSION

For  the  foregoing  reasons,  **IT  IS  HEREBY  ORDERED**  that Defendant's motion for summary judgment (Doc. 36) is **GRANTED.**  The Clerk  is  **DIRECTED**  to  **ENTER  JUDGMENT**  in  favor  of  Defendant, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this _____ day of August, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA